## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

PAMELA P.,                          )
                                    )
          Plaintiff,                )
                                    )
v.                                  )          Case No. 20-CV-00144-CDL
                                    )
KILOLO KIJAKAZI[1],                 )
Acting Commissioner of the          )
Social Security Administration,     )
                                    )
          Defendant.                )

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social

Security Administration (Commissioner) denying Social Security disability benefits.  The

parties have consented to proceed before a United States Magistrate Judge in accordance

with 28 U.S.C. § 636(c)(1), (2).  For the reasons set forth below, the undersigned **reverses**

the Commissioner's decision denying benefits.

## Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying

individuals who have a physical or mental disability.  *See* 42 U.S.C. § 423.  The Act defines

"disability" as an "inability to engage in any substantial gainful activity by reason of any

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

### Procedural History

Plaintiff filed an application for social security disability benefits on May 27, 2014. Plaintiff alleges she became disabled due to back pain, the inability to sit greater than fifteen minutes, inability to stand greater than five minutes, arthritis, depression, and hypertension. (R. 175). Plaintiff was fifty years old on the alleged amended onset date of

November 1, 2014.[2]  Prior to the amended onset date, Plaintiff worked as a medical case manager.  The Social Security Administration denied Plaintiff's application on initial review and on reconsideration.  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing on October 23, 2015.  Testimony was given by Plaintiff and Vocational Expert (VE) Lisa Cox.  On December 21, 2015, the ALJ issued a decision denying disability benefits. (R. 493).  On January 30, 2017, the Appeals Council denied Plaintiff's request for review. (R. 1).  The District Court affirmed the ALJ decision on January 26, 2018.  (R. 524).[3]  On appeal, the Tenth Circuit Court of Appeals reversed and remanded for further proceedings on October 19, 2018.  (R. 526).  The District Court remanded the case in accordance with the 10th Circuit Court of Appeals Order on December 12, 2018. (R. 553-554).

In the interim, Plaintiff filed a subsequent application and was found disabled beginning November 1, 2016.  (R. 586, 603).  Consequently, the period now at issue for review is the amended onset date through the date Plaintiff was subsequently found disabled (November 1, 2014 through October 31, 2016).  The ALJ held a second hearing on November 1, 2019.  Testimony was given by Plaintiff and VE Diana Kizer.  On January 22, 2020, the ALJ issued a decision denying disability benefits for the relevant period. (R. 429).  The Appeals Council did not assume jurisdiction, which rendered the ALJ's decision

---

[2] Plaintiff's original application alleged an onset date of May 12, 2014 to November 1, 2014. (R. 474).

[3] 17-CV-118-FHM was the case number on the previous appeal to the District Court.

the agency's final decision.  Accordingly, the Court has jurisdiction to review the ALJ's January 22, 2020 decision under 42 U.S.C. § 405(g).

## The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

Here, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity during the relevant period from November 1, 2014 through October 31, 2016. (R. 435).  At step two, the ALJ determined that Plaintiff has the following severe

impairments: obesity, degenerative disc disease, and calcaneal spur to the right foot. *Id*.

The ALJ also found non-severe mental impairments of depression and anxiety. *Id*.  At step

three, the ALJ found that Plaintiff's physical and mental impairments do not meet or equal

the criteria for any listing. (R. 436) The ALJ stated that he gave special consideration to

Listing 1.02, Major dysfunction of a joint(s) (due to any cause), and Listing 1.04, Disorders

of the spine.  *Id*.  The ALJ also factored obesity in the analysis of listings with Plaintiff's

impairments and found that her severe impairments in combination with obesity do not

meet or equal a listing.  *Id*.  In accordance with these findings, the ALJ proceeded to step

four.

At step four, the ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a)
> except she had the following limitations. The claimant was
> able to lift and/or carry ten pounds occasionally and up to ten
> pounds frequently.  The claimant was able to stand and/or walk
> at least two hours in an eight-hour workday and sit at least six
> hours in an eight-hour workday.   The claimant could
> occasionally climb such as things [sic] as stairs, stoop, kneel,
> crouch, or crawl.

*Id*.  In making his finding, the ALJ considered all symptoms and the extent to which these

symptoms can reasonably be accepted as consistent with the objective medical evidence

and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSR 16-3p.  (R.

437).  The ALJ also considered opinion evidence in accordance with the requirements of

20 C.F.R. § 404.1527.  *Id*.

Citing the VE's testimony as to a hypothetical person with Plaintiff's RFC, the ALJ

found that Plaintiff would be able to perform her past work as a medical case manager,

both as actually and as generally performed. (R. 443-444). Accordingly, the ALJ found Plaintiff was not under a disability, as defined in the Social Security Act, at step four.

## Plaintiff's Arguments

Plaintiff argues that the ALJ failed to properly consider the opinions of her treating physicians.  Plaintiff also argues that the ALJ failed to properly consider her subjective complaints of pain. The Commissioner argues that the ALJ's decision to discount the opinions of Plaintiff's treating physicians and her subjective claims regarding her limitations is supported by substantial evidence and free from error.

## Analysis

### A.    Opinions from Plaintiff's Treating Physicians

Plaintiff first contends that the ALJ failed to properly evaluate the opinions of Plaintiff's treating physicians, Terry Horton, M.D. and Hugh Salguero, M.D.  In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).  Under the Commissioner's regulations in effect for claims filed before March 27, 2017, which apply to this case, an ALJ is required to give that opinion "controlling weight . . . as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as

consultative examinations or brief hospitalizations." *Id.* (quoting *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir. 2003)). Accordingly, "[w]hen an ALJ rejects a treating physician's opinion, he must articulate specific, legitimate reasons for his decision." *Id.* (citing *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted)).

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300. Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(c)(2).

Plaintiff's treating physician, Dr. Horton, opined that due to pain from severe degenerative disc disease, Plaintiff's ability to sit and stand/walk was less than two hours in an eight-hour workday and she could lift/carry ten pounds frequently. (R. 241, 718). Dr. Horton also opined that Plaintiff's obesity exacerbated her physical condition. *Id.* Similarly, Plaintiff's pain management specialist, Dr. Salguero, opined Plaintiff's ability to sit was limited to two to three hours in an eight-hour workday, her ability to stand/walk

was limited to less than two hours in an eight-hour workday, and she could lift/carry ten

pounds frequently. (R. 721).  Dr. Salguero also opined that Plaintiff's obesity exacerbated

her physical condition.  *Id.*  At the administrative hearing, the VE testified that competitive

work would be eliminated when asked about a hypothetical person with the same sit,

stand/walk, and lift/carry limitations assessed by Dr. Horton. (R. 54).

In his decision, the ALJ provided the following assessment of Dr. Horton's medical

source opinion:

> The opinion of Dr. Horton is accorded partial weight to the extent it is
> consistent with the above residual functional capacity. A finding that the
> claimant was limited to sitting or standing/walking less than two hours in an
> eight-hour workday is not supported, however, by the January 30, 2015
> physical examination of Dr. Halsell that showed she was in no acute distress,
> had normal strength to her extremities, and a normal gait. (citing Exhibit 9F,
> pages 5-6).   Additionally, a finding that claimant was limited to sitting and
> standing/walking less for [sic] than two hours in an eight-hour workday is
> not supported by the May 19, 2016 physical examination of Dr. Salguero that
> showed her musculoskeletal system had a normal range of motion without
> pain and muscle strength at 5/5. (citing Exhibit 19F, pages 48-50).

(R. 442-443).

Similarly, the ALJ accorded partial weight to the opinion of Dr. Salguero and

provided the following assessment:

> The opinion of Dr. Salguero is accorded partial weight to the extent that it is
> consistent with the above residual functional capacity.  A finding that the
> claimant could sit for only two to three hours and stand/walk less than two
> hours in an eight-hour workday is not supported, however, by the December
> 13, 2014 physical examination of Dr. Wiegman that showed she had a normal
> range of motion to her extremities and a normal gait. (citing Exhibit 8F).
> Additionally, a finding that the claimant could only sit for two to three hours
> in an eight-hour workday is not supported by Dr. Salguero's May 19, 2016
> physical examination that showed her musculoskeletal system had a normal
> range of motion without pain or crepitus and muscle strength at 5/5. (citing
> Exhibit 19F, pages 48-50).

(R. 442).

The problem with the ALJ's logic is that none of the medical evidence he cited is relative to Plaintiff's back pain from her degenerative disc disease, which was the premise for the opinions of Dr. Horton and Dr. Salguero when assessing her limitations.  In Dr. Horton's May 23, 2014 medical source opinion, he assessed Plaintiff's limitations based on findings of "Severe Degenerative Disc Disease of lumbar spine" as well as "Lots of pain & Restricted motion."  (R. 241).  Dr. Horton also noted that Plaintiff "is unable to sit more than 15 minutes without having to get up/reposition" and she "cannot stand more than 5 minutes without increase in pain in back."  *Id.*  Dr. Horton's opinion was supported by an x-ray of Plaintiff's lumbar spine taken the same day.  The x-ray report indicated Plaintiff had "severe multilevel degenerative disc disease from L2 through L5" and "marked disc space narrowing with osteophyte formation and endplate sclerosis."  (R. 250).  It also indicated that "[a]symmetric disc space loss results in sigmoidal degenerative spinal curvature" and "lower lumbar facet arthrosis."  *Id*.  An additional medical source opinion from Dr. Horton dated June 26, 2016 assessed the same limitations due to findings of "Severe Degenerative Disc Disease all Lumbar spine", and "Pain major issue" along with "Restricted motion." (R. 718).  Dr. Horton also noted Plaintiff was "Seeing pain doctor," and she is "on meds & having procedure." *Id.*

Likewise, the June 16, 2016 medical source opinion of Dr. Salguero assessed that Plaintiff's limitations based on "MRI findings" from an MRI taken the same day.  (R. 721).  The lumbar spine MRI report indicated "[m]ild lumbar scoliosis" and "[m]oderate degeneration of the disc with small midline disc protrusion" at both L1-2 and L3-4.  (R.

720).  The MRI report indicated "[m]oderate to marked degeneration of the disc with small

midline disc protrusion" and "[m]ild to moderate degeneration of the facets most notably

on the left side resulting in narrowing of the neural foramen" at L2-3.  *Id.*  The MRI report

indicated "[m]oderate degeneration of the disc" and "[m]ild to moderate degeneration of

the facets" at L4-5.  *Id.*  The MRI report also indicated "[m]ild degeneration of the disc"

and "[m]oderate degeneration of the facets most notably on the right" at L5-S1. *Id.*

Here, the ALJ asserts that medical records with normal findings of strength in her

extremities, gait, musculoskeletal range of motion, and muscle strength are inconsistent

with the opinions of Dr. Horton and Dr. Salguero.  Those findings are not probative of her

severe back pain from degenerative disc disease.  Interestingly, the ALJ cited similar

findings in his previous decision and those findings were rejected by the Tenth Circuit[4].

The Tenth Circuit opinion noted that "[t]he problem with the ALJ's rationale, however, is

that none of the evidence he relied upon is probative of Ms. Praytor's pain, which was the

basis for Dr. Horton's opinion."  (R. 532).  The Tenth Circuit found that "the evidence

cited by the ALJ relates largely to her functional abilities divorced from her pain: her gait,

---

[4] While the ALJ's previous decision is not currently before the court for review, the undersigned notes that the Tenth Circuit remand Order faulted the ALJ's December 21, 2015 decision for an inadequate evaluation of Plaintiff's treating physician's opinion and an improper analysis of Plaintiff's subjective complaints of pain.  Here, the Plaintiff again argues that the ALJ provided inadequate evaluations of Plaintiff's treating physicians and her subjective complaints of pain.  Therefore, the court's review of the ALJ's compliance with the remand instructions from the Tenth Circuit is appropriate. *See Scott v. Chater,* 70 F.3d 1282, 1995 WL 694084 (10th Cir. 1995) (unpublished) (indicating that reversal of determination was based, in part, upon ALJ's failure to consider certain medical evidence as directed on remand).

her limited ability to heel/toe walk, the strength of her lower extremities, her sensory function, the absence of swelling and deformities, and the relief of her foot pain." *Id.*

However, the ALJ failed to correct this discrepancy on remand, as discussed above. Additionally, the ALJ failed to address the x-ray and MRI diagnostic evidence that is consistent with the opinions of Dr. Horton and Dr. Salguero. As set forth *supra*, the ALJ's decision on remand again cited nonprobative evidence to discount the opinions of Plaintiff's treating physicians, while ignoring substantial evidence in the record that is consistent with their opinions. The Tenth Circuit remand order addressed similar findings and opined "[y]et the ALJ relied on these findings and the other nonprobative evidence to discount Dr. Horton's opinion, which was otherwise supported by objective diagnostic evidence." *Id.* The Tenth Circuit opined "[g]iven this apparent disconnect and the ALJ's failure to explain how this evidence undermines Dr. Horton's opinion, it is not at all apparent how the evidence cited by the ALJ does *not* support Dr. Horton's opinion." (R. 532-533). (citing *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004)) (remanding because the ALJ failed to explain or identify the "claimed inconsistencies" between treating physician's opinion and substantial evidence). Despite instructions from the Tenth Circuit on remand, the ALJ essentially duplicated his rationale and cited more nonprobative evidence to support his findings. The ALJ again failed to explain the purported inconsistencies between the medical evidence he cited and the opinions of Dr. Horton and Dr. Salguero.

The commissioner argues the ALJ reasonably discounted the limitations assessed by Dr. Horton and Dr. Salguero because the record contains evidence of normal and near-

normal findings, including "full strength, intact sensation, a normal walking gait, normal neurological findings, and normal ranges of motion." (Doc. 24, page 10) (citing R. 441-442, 360, 371, 370). For example, the consultative examination report of David Weigman, M.D. shows the "[p]laintiff had reduced range of motion with normal or slow gait, but no persisting positive neurological findings." (Doc. 24, page 8) (citing R. 437-443, 359-361, 381-382, 744-745, 756). However, the December 13, 2014 consultative examination report of Dr. Weigman cited by the commissioner also contained findings consistent with Plaintiff's treating physician opinions. For example, Dr. Weigman cited impressions of "chronic low back pain with severe degenerative disc disease." (R. 361). Dr. Weigman noted that Plaintiff "is on multiple pain medications for this [low back pain]". *Id.* Dr. Weigman found Plaintiff "has slightly decreased range of motion and pain today on examination and this is limiting her walking, standing, and lifting…" *Id.* Dr. Weigman also found "[r]ight foot pain" and that Plaintiff "has had some arthritis in her right foot" which "has caused her pain and difficulty with walking and standing as well." *Id.* Dr. Weigman also found Plaintiff had "[h]ypertension and [m]orbid obesity." *Id.* Yet, the ALJ does not explain why he chose not to rely on the evidence which supports the opinions of Dr. Horton and Dr. Salguero.

The Commissioner argues that the evidence cited in the decision supports the ALJ's conclusion, but the medical evidence he cited is the same nonprobative medical evidence the Tenth Circuit found to be related to Plaintiff's functional abilities, rather than her pain.

In addition to the x-ray and MRI reports, the record contains substantial evidence consistent with the limitations assessed by Dr. Horton and Dr. Salguero. Plaintiff has a

lengthy history of treatment for chronic back pain via pain medications and steroid injections. The October 22, 2014 office visit with Dr. Horton noted constant chronic back pain in the lumbar spine. (R. 346). The record described the pain as "aching" and "radiates to the left thigh". *Id.* The pain is described as "severe" and rated "at a severity of 10/10." *Id.* The report stated the "symptoms are aggravated by bending and twisting" and "[a]ssociated symptoms include numbness." *Id.* The physical examination reflected decreased range of motion and tenderness of the lumbar back. *Id.* Plaintiff was prescribed hydrocodone-acetaminophen. *Id.* Plaintiff sought treatment again from Dr. Horton for her back pain on April 2, 2015 and was prescribed morphine and oxycodone. (R. 395).

On November 3, 2014, December 1, 2014, January 30, 2015, and February 27, 2015, Plaintiff sought treatment with Jeffrey Halsell, D.O. for "low back pain radiating into her left foot" and "numbness in the same distribution." (R. 356-357, 369, 371). On all four occasions, Plaintiff described her pain "as an ache and rates it as 9/10" and stated "her pain is worse with activity and better with rest." *Id.* Dr. Halsell assessed Plaintiff with "[l]ow back pain with radiculopathy" and prescribed fentanyl, oxycodone and Gabapentin at all four office visits. *Id.*

On May 4, 2015, September 15, 2015, February 25, 2016, May 19, 2016, and June 16, 2016, Plaintiff sought treatment for her back pain from Dr. Salguero and was prescribed Percocet. (R. 383, 728, 756, 771, 776). On July 29, 2015, August 26, 2015, October 27, 2015, December 22, 2015, Plaintiff sought treatment for her lower back pain from Lauren Devoe, M.D. and was prescribed Embeda and Percocet. (R. 390, 724, 738, 746). Plaintiff

13

saw Dr. Devoe again on October 24, 2016 and was prescribed MS Contin and Percocet. (R. 798).

In addition to prescribed pain medications, on June 1, 2015 and June 24, 2015, Plaintiff received epidural steroid injections at L5-S1. (R. 384, 386). On September 24, 2015, November 12, 2015, January 28, 2016, and April 21, 2016, Plaintiff received transforaminal epidural steroid injections at levels Left L4 and Left L5. (R. 732, 740, 751, 765). On March 22, 2016, Plaintiff received a bilateral sacroiliac joint injection. (R. 761). On July 15, 2016 and July 29, 2016, Plaintiff received bilateral medial branch facet block injections at levels L3-L4, L4-L5, and L5-S1. (R. 780, 784). On August 12, 2016 and September 1, 2016, Plaintiff received lumbar radiofrequency ablation right side injections at levels L3-L4, L4-L5, and L5-S1. (R. 788, 792).

The commissioner argues the oral medications and injections improved Plaintiff's symptoms, so the ALJ reasonably discounted the limitations assessed by Dr. Horton and Dr. Salguero. The commissioner's brief states medical evidence shows "[p]laintiff's low back and leg pain admittedly improved 50 to 75 percent, for weeks at a time, with treatment consisting of medication and injections." (Doc. 24 at 9 (citing R. 437-443, 723-724, 727, 737, 745, 751, 756, 770, 788, 792, 796-798)). While it is true that Plaintiff reported some improvement with medications and injections, her relief was limited and only temporary. The medical record, as outlined above, clearly reflects that Plaintiff continued to regularly seek treatment for pain once the relief received from medications and injections receded.

The commissioner lastly argues that Plaintiff's failure to advise her treating physicians of limitations related to sitting supports the ALJ's decision to discount their

opinions regarding her limitations.  On the contrary, the record reflects that Plaintiff consistently reported that her pain increased while sitting.  During the relevant period, medical records from office visits on May 4, 2015, August 26, 2015, September 15, 2015, October 27, 2015, December 22, 2015, June 16, 2016, and October 24, 2016 show that Plaintiff reported her pain was worse with "sitting, standing, walking, lifting, bending forward, laying flat, activity." (R. 382, 723, 727, 737, 745, 775, 797).  The court further finds that this argument has no merit because Plaintiff's failure to notify her doctors of sitting limitations was not a reason given by the ALJ for discounting their opinions.  As outlined above, the ALJ discounted their opinions based on purported inconsistencies between the medical evidence he cited and their opinions.  Further, nowhere in the ALJ's opinion does he mention Plaintiff's failure to advise her doctors of a sitting limitation. "The ALJ's decision should have been evaluated based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see also Knipe v. Heckler*, 755 F.3d 141, 149 n.16 (10th Cir. 1985) (holding that an ALJ's decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action). District courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2004).

In sum, the Court finds the ALJ erred in discounting the opinions of Dr. Horton and Dr. Salguero because he failed to provide a sufficiently specific and legitimate explanation as to how their opinions are not consistent with the medical evidence.  Although the ALJ cited medical evidence he purported was inconsistent with the limitations assessed by Dr.

15

Horton and Dr. Salguero, he failed to explain how that evidence was inconsistent with their opinions regarding Plaintiff's degenerative disc disease pain.  Additionally, the ALJ failed to address or explain extensive evidence that is significantly probative to Plaintiff's limitations.

### B.    Plaintiff's Complaints of Pain

#### 1.    Standards for Evaluating Subjective Symptoms

In *Luna v. Bowen*, the Tenth Circuit outlined a framework for evaluating a disability claim based on pain:

> If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged.  "[T]he impairment or abnormality must be one which 'could reasonably be expected to produce' the *alleged* pain." … If an appropriate nexus does exist, the decision maker must then consider all the evidence presented to determine whether the claimant's pain is disabling.

834 F.2d 161, 163 (10th Cir. 1987) (citation omitted). The *Luna* framework requires the ALJ to consider "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163-64).

The Commissioner's regulations outline a two-step process for evaluating a claimant's subjective symptoms, including pain.  *See* SSR 16-3P, 2017 WL 5180304, at *2-3 (Oct. 25, 2017). The agency first considers "whether there is an underlying medically

determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *See id.* at *3; *see also* 20 C.F.R. §§ 404.1529, 416.929. "Second, once [such] impairment(s) . . . is established, [the agency] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *See* SSR 16-3P, at *2-3 at *3.[5]

In conducting the analysis of the intensity and persistence of a claimant's pain, the agency will consider objective medical evidence and will also "carefully consider any other information [claimant] may submit about [their] symptoms." 20 C.F.R. § 404.1529(c)(3). The agency's regulations further explain its process of evaluating pain intensity and persistence:

> We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons…. Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

---

[5]   While the agency describes the analysis as involving a two-step process rather than the three considerations described in *Luna* and *Keyes-Zachary*, the regulatory policy generally comports with the approach as outlined in the cases. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016).

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.*; *see also Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan,* 945 F2d. 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed); *see also Keyes-Zachary,* 695 F.3d at 1167.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (quoting *Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Wilson,* 602 F.3d at 1144 (quoting *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988) (internal quotation marks omitted)).[6]

## 2.    Discussion

During the relevant timeframe, the Plaintiff had severe impairments of "obesity, degenerative disc disease, and calcaneal spur to the right foot" (R. 435). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause

---

[6]    The agency no longer uses the term "credibility" to describe the ALJ's analysis of subjective symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *2 (the Commissioner "eliminat[ed] the use of the term 'credibility' from [the] sub-regulatory policy, as [the] regulations do not use this term," and "subjective symptom evaluation is not an examination of an individual's character"). However, the standard of review of the ALJ's consistency analysis is the same as when the agency used the term "credibility." *See, e.g., Zhu v. Commissioner*, ___ F. App'x ___, , at *5, n.7 (10th Cir. Jul. 6, 2021) (citing SSR 16-3P, at **1, 2, 8 (Oct. 25, 2017)).

the alleged pain. (R. 437).  Because the Plaintiff had medically determinable impairments

that could reasonably be expected to cause her pain, the ALJ was required at the next step

to "evaluate the intensity and persistence of those symptoms to determine the extent to

which the symptoms limit an individual's ability to perform work-related activities." SSR

16-3P, at *3; *see also* 20 C.F.R. § 404.1529; *see Luna*, 834 F.2d at 163-64 (last step is to

determine, upon consideration of all of the evidence, whether claimant's pain is disabling);

*Keyes-Zachary*, 695 F.3d at 1166-67.

The ALJ provided a summary of Plaintiff's hearing testimony about her pain and

other symptoms, then determined that:

> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be
> expected to cause the alleged symptoms; however, the claimant's statements
> concerning the intensity, persistence and limiting effects of these symptoms
> are not entirely consistent with the medical evidence and other evidence in
> the record for reasons explain in this decision.  This is evident based on May
> 19, 2016 physical examination of Hugo Salguero, M.D. that showed the
> claimant's musculoskeletal system has a normal range of motion without
> pain or crepitus, no deformities or muscle wasting, and muscle strength at
> 5/5 (Exhibit 19F, pages 48-50).

(R. 437).

As explained above, the Court finds that the ALJ improperly focused on a selected

portion of the medical records, which are nonprobative to Plaintiff's complaints of pain

due to her degenerative disc disease.  The ALJ also ignored evidence that is significantly

probative of Plaintiff's back pain.  "The determination . . . must contain specific reasons

for the weight given to the individual's symptoms, be consistent with and supported by the

evidence, and be clearly articulated so the individual and any subsequent reviewer can

assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P,  at *10. While a formalistic, factor-by-factor recitation of the evidence is not required, the ALJ must set forth the specific evidence he relies on in evaluating a claimant's subjective symptoms and must give specific reasons for his findings that are closely linked to substantial evidence.  *See White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001); *Kepler v. Chater,* 68 F.3d 387, 390-91 (10th Cir. 1995).

Here, the ALJ's decision does not adequately address the medical evidence relating to Plaintiff's back pain from her severe degenerative disc disease, nor does it adequately explain why the ALJ apparently discounted certain statements by Plaintiff regarding her pain. For instance, at the hearing, Plaintiff testified that her back pain during the relevant timeframe was "very strong" and "on a 1 to 10 scale, it could get up to a 7 to 8 with nothing flat."  (R. 460).   Plaintiff  testified  that  at  her  previous  employment  she  transcribed  the physicians' orders, "which required me to walk from my office to the nurses' station to do that which caused me great pain."  (R. 458).  Plaintiff testified that she would also "visit patients in their rooms which would cause me to have to go down and up hallways for quite a bit of distance."  *Id.*

Plaintiff testified "it was very painful to sit for a very long period of time" and "[u]sually  about  every  30  minutes  I  would  have  to  change  positions,  either  get  up, reposition -- or something." (R. 459).  Plaintiff testified her pain was worse when "[s]itting too long . . . standing very long, ambulating definitely was a big, big painful experience for me."  (R. 461).   Plaintiff testified the longest she could be on her feet without significant pain was ten minutes, the longest she could sit before changing positions was "probably 15

20

to 30 minutes," and she spent "90% maybe" of her day sitting with her feet elevated or lying down. (R. 462). The ALJ discounted these statements, finding instead that Plaintiff has the RFC to stand and/or walk at least two hours in an eight-hour workday and sit at least six hours in an eight-hour workday.

Plaintiff also testified she needed help with laundry "lifting and stuff" because she "could throw my individual pieces in the laundry, you know, but they would take the big amounts when they were wet and heavy" because she "couldn't do that." (R. 465). Plaintiff testified she "couldn't walk around and carry it [laundry] from room to room and put it -- at every little room where it belonged" because it would cause extra back pain. *Id.* Plaintiff also testified that her weight made her pain worse. (R. 461). Yet the ALJ discounted these statements and found that Plaintiff has the RFC to occasionally lift and/or carry 10 pounds and frequently lift and/or carry up to 10 pounds. However, the ALJ's decision does not provide "specific reasons . . . that are closely linked to substantial evidence" for this determination, because it fails to address significantly probative evidence that Plaintiff's severe back pain limited her ability to do her work-related activities.

The ALJ found that Plaintiff's statements concerning the limiting effects of her pain were not entirely consistent with the medical evidence of record and that Plaintiff maintained the ability to perform work-related activities within the range of limitations set out in the RFC. (R. 437). In support, the ALJ cited medical evidence in the record he found inconsistent with Plaintiff's allegations of pain. However, the ALJ again cited medical evidence that is related to Plaintiff's functional abilities and not probative of her

21

back pain.  For example, citing the November 3, 2014 visit with Dr. Halsell, the ALJ noted that "[t]he claimant, however, was well developed appearing and in no acute distress."  (R. 438).  The ALJ noted "claimant's strength to her upper extremities was 5/5 for her shoulder abductors, elbow flexion, and finger flexion", that she "had 5/5 strength to her bilateral hip flexors, knee extensors, dorsiflexion, and plantarflexion", that "[h]er gross sensation to light touch was intact in the bilateral upper and lower extremities", and that she "had a normal gait and was able to walk on heels and toes for 4-5 steps." *Id.* (citing Exhibit 7F, page 1).  However, the findings that Plaintiff was well developed, in no acute distress, and had normal neurological findings for strength, gait, and range of motion do not rule out back pain.  The ALJ cited approximately six pages of similar medical evidence with findings that are not probative of Plaintiff's back pain.

The ALJ also acknowledged, but failed to explain, significant evidence which supports Plaintiff's complaints of back pain.  Citing the same November 3, 2014 visit with Dr. Halsell, the ALJ also noted that Plaintiff alleged "chronic lower back pain radiating to her left foot" and "numbness."  (R. 437-438).  The ALJ noted that the physical examination showed Plaintiff had a BMI of 51.5 and she "was positive for choreiform movement in all extremities."  (R. 438).  The ALJ cited the December 13, 2014 consultative examination with Dr. Wiegman, where the physical examination showed Plaintiff "had a decreased range of motion to her back with tenderness to palpation" and a "slightly decreased sensation to light touch in the left anterior thigh." *Id.*  The ALJ also acknowledged the physical examination showed Plaintiff "was unable to walk on her toes and heels separately and had difficulty walking heel-to-toe due to losing her balance." *Id.*  Nonetheless, the

22

ALJ found this evidence was outweighed by other findings, including a normal range of motion to Plaintiff's neck, hips, knees, ankles, shoulders, elbows, wrists, and thumbs, normal gait and good coordination. However, as discussed above, the latter findings are unrelated to Plaintiff's back pain.

As outlined herein, the medical record contains significant objective evidence that supports Plaintiff's complaints of back pain.  Plaintiff sought treatment for her back pain and was prescribed pain medication fourteen times from November 3, 2014 to October 24, 2016, which is an average of about every two months.  Plaintiff also received eleven steroid injections in a fifteen-month period from June 1, 2015 to September 1, 2016, often monthly.  The ALJ cited the lumbar spine MRI taken on June 15, 2016, which "showed mild scoliosis and moderate to marked diffuse degenerative changes to the lumbar spine." (R. 441). (citing Exhibit 17F).  Notably, this is the same MRI that Dr. Salguero relied upon in his medical source opinion when he assessed Plaintiff's limitations.  However, the ALJ erred in failing to address this objective and diagnostic evidence when he discounted Plaintiff's complaints of severe pain.  *See* SSR 16-3p, at *9 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.").

Where a significant portion of the record evidence supports the subjective testimony, the ALJ must explain why he has determined that the subjective testimony is not credible.  While the ALJ need not discuss all of the evidence in the record, he may not

ignore evidence that does not support his decision, especially when that evidence is "significantly probative." *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996).

> The ALJ provided the following summary of Plaintiff's hearing testimony:
>
> Her back pain has markedly increased and her pain medication has increased. She was experiencing pain to her lower back that would go into her left leg. Her pain was worse with sitting and standing too long.  Her pain was worse with ambulating. The claimant's weight made her symptoms worse. She could be on her feet for ten minutes and sit for fifteen to thirty minutes. She was most comfortable sitting with her feet elevated of [sic] down, which she did for ninety percent of her waking day. She used an electric cart at the grocery store. She required assistance with handling groceries. She had difficulties with personal care. She could cook for very short periods of time. She could do very little household cleaning. Family and friends would visit her because it was difficult for her to get out of the house due to her symptoms. Her pain and numbness interrupted her sleep. Her medication caused drowsiness and difficulty with concentration.

(R. 437).  However, the ALJ's decision fails to reasonably explain why he discounted some of Plaintiff's testimony regarding her limitations in determining Plaintiff's RFC and her ability to perform past relevant work. The boilerplate statement that a claimant's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" is not sufficient.  *Id.*; *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible. . . . The use of standard boilerplate language will not suffice") (internal citations and quotation marks omitted).

For the reasons set forth above, the Court finds that the ALJ failed to address significantly probative evidence supporting Plaintiff's allegations. Importantly, Plaintiff's statements indicated that she is limited as to certain functions in the assessed RFC—such

24

as ambulating, sitting, and standing—that Plaintiff testified were required in her past relevant work. Thus, the Court cannot find the ALJ's error is harmless because a reasonable administrative factfinder could have found that Plaintiff's symptoms result in additional functional limitations, which could limit her ability to perform her past relevant work. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way).

### C. Remand for Award of Benefits

The Tenth Circuit has held that it is the discretion of the district court whether or not to award benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). Some of the relevant factors the district court considers are the length of time the matter has been pending and whether or not "given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits." *Id.* (citing *Harris v. Sec'y of Health & Human Servs.*, 821 F2d 541, 545 (10th Cir. 1987)).

Since this case was initiated on May 27, 2014, the ALJ has denied benefits twice by citing nonprobative medical evidence and by failing to properly evaluate treating physician opinions and Plaintiff's subjective complaints of pain. The Tenth Circuit has already rejected similar findings. Additionally, the Plaintiff has since been found disabled as of November 1, 2016 on a subsequent application due to her severe degenerative disc disease and pain. Remanding this case for additional fact-finding would serve no purpose, because no additional evidence will materialize for the relevant period, which is several years in the

past.  Given that the objective and diagnostic record evidence will remain unchanged, the undersigned has no reason to believe the ALJ will alter his opinion in a third decision.

### Conclusion

The Court finds the ALJ's decision is not supported by substantial evidence, and the ALJ failed to apply proper legal standards established by the Commissioner and the courts. Furthermore, the Court finds that the opinions of Plaintiff's treating physicians and her subjective complaints of pain are consistent with the medical evidence in the record and support a finding of disability.  For these reasons, the Court finds a reversal and remand for an immediate award of benefits for the closed period of November 1, 2014 through October 31, 2016 is appropriate.  Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** to the Secretary for payment of benefits for the relevant time period**.**

ORDERED this 30th day of September, 2021.

Christine D. Little
United States Magistrate Judge